[No. A116083. First Dist., Div. Four. Jan. 15, 2008.]

In re the Marriage of AUBIN and CATHERINE CORBIN BARTHOLD.
AUBIN BARTHOLD, Appellant, v.
CATHERINE CORBIN BARTHOLD, Respondent.

COUNSEL

Tarkington, O'Neill, Barrack & Chong and Robert A. Roth for Appellant.

Garrett C. Dailey and Dennis K. Rothhaar for Respondent.

OPINION

RUVOLO, P. J.—

## I.

## INTRODUCTION

The California Supreme Court held, in *Le Francois v. Goel* (2005) 35 Cal.4th 1094 [29 Cal.Rptr.3d 249, 112 P.3d 636] (*Le Francois*), that even when Code of Civil Procedure section 1008 (section 1008) precludes a party from moving for reconsideration, a trial court has inherent authority to correct an erroneous ruling on its own motion. In this marital dissolution case, the trial judge denied a postjudgment motion filed by the wife. She promptly filed a motion for reconsideration. The trial judge determined that the motion did not in fact meet the requirements of section 1008, but also that his earlier ruling had been erroneous. Accordingly, the judge reversed himself, and granted the relief sought by the wife.

We conclude that the trial court's inherent authority to correct its errors applies even when the trial court was prompted to reconsider its prior ruling

by a motion filed in violation of section 1008. Because that is what occurred in the present case, we affirm the trial court's order.

## II.

## FACTS AND PROCEDURAL BACKGROUND

Appellant Aubin Barthold (Aubin) and respondent Catherine Corbin Barthold (Kay) were married in May 1974, and separated in June 2003.[1] Aubin filed a petition for dissolution of the marriage in July 2003. After the separation, Kay remained in the community property family home in Piedmont, while Aubin moved first to San Francisco and then to Seattle. In February 2005, they entered into a marital settlement agreement (MSA), which was incorporated into a judgment. The MSA provided that the family home would be sold, and the proceeds distributed between the parties. Because Aubin was anxious to realize the proceeds from the sale as soon as possible, the MSA included provisions giving Kay incentives to cooperate in getting the house sold quickly.

Specifically, the MSA, as originally drafted, provided that Kay would receive certain sums from Aubin's share of the sale proceeds if (1) Kay signed both the MSA and the listing agreement by March 1, 2005 (the listing bonus); and (2) the parties accepted an offer to purchase the home by May 1, 2005 (the signing bonus). A handwritten addendum to the listing bonus clause provided that the listing bonus would only be payable if "the property is listed in the MLS [multiple listing service] by March 15th, unless that listing is delayed at the suggestion of the broker. In that case, either party may apply to the Court for an Order requiring the listing." (Original capitalization.) The handwritten addendum was inserted by Kay's attorney, with Aubin's consent, just before the MSA was signed by the parties.

Kay moved out of the home by the end of February 2005, and on March 1, 2005, informed Aubin that she had done so.[2] The home was not listed in the MLS (multiple listing service) until after March 15, however. After the home was sold, the parties agreed that Kay was entitled to the signing bonus, under an extension of the deadline to which Aubin had agreed, but disagreed as to her entitlement to the listing bonus. Kay therefore filed a motion seeking to establish her right to the listing bonus.

Kay's declaration in support of the motion asserted that "I am entitled by the [MSA] to [the listing] bonus if I signed all of the documents for the

---

[1] As is customary in family law cases where parties share the same surname, we refer to them by their first names for ease of reference, meaning no disrespect. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].)

[2] All further references to dates are to the year 2005 unless otherwise noted.

listing by March 1, 2005 and the listing was delayed at the suggestion of the broker. I met both those conditions." She stated that Aubin had come to California on March 5 to move his possessions out of the house, but had left town on March 12 without completing the task. She averred that "At that point, it was obvious that the house could not be listed by the target date of March 15, and our broker had no choice but to suggest that the listing be delayed." She explained that at Aubin's request, she and their sons had moved some of the rest of Aubin's possessions between March 17 and March 21, and that "[a]fter that the broker decided she had to postpone the listing even further." Finally, Kay argued that "I did everything I could to get this house sold expeditiously. The delay was entirely the responsibility of [Aubin] and the broker made sensible decisions to postpone the listing in view of [Aubin's] failure to perform the work he was supposed to do."

In his opposition to Kay's motion, Aubin took the position that the handwritten addendum to the MSA was intended to require Kay to get court permission for any delay in listing the house, if she wished to recover the listing bonus despite the delay. He noted that no such permission had been obtained either from him or from the court, and also averred that the broker had never suggested to him that the deadline for listing the home be extended, and that neither the broker nor Kay's attorney had ever contacted him or his attorney about extending it. He also outlined the steps he had taken, on short notice, to remove his belongings from the house during the first two weeks of March. He argued Kay's evidence that the broker recommended the listing delay was insufficient, but did not produce any evidence that the broker had not actually made such a recommendation. Instead, the principal argument in his memorandum of points and authorities was that the broker's recommendation was not sufficient to preserve Kay's right to the listing bonus unless one of the parties requested and obtained court approval for the delay.

In his order filed July 19, 2006, the trial judge rejected Aubin's position that Kay "was under an obligation to go to court to seek permission to have the listing delayed." Accordingly, the judge identified as the "real question" the issue whether the listing was in fact delayed at the broker's suggestion. On this question, the judge characterized Kay's statement in her declaration that " 'the broker had no choice but to suggest that the listing be delayed' " as constituting "weasel words" that "do not say directly that the broker suggested anything." Accordingly, since no declaration from the broker had been submitted, and Kay "could not bring herself to swear under oath that the broker suggested the delay," the court declined to find that the broker did so, and ruled that Kay was not entitled to the listing bonus.

On July 31, 2006, Kay filed a motion for reconsideration under section 1008. In support of the motion, Kay filed a declaration explaining that she

had not realized, when she filed her original declaration, that there would be any dispute that the broker had in fact suggested the listing delay. She also supplied a declaration from the broker verifying that the delay was at the broker's recommendation, because the home was not "ready for showing and sale" by March 15.

In his opposition to Kay's motion, Aubin argued that Kay had presented no new or different facts, and that to the extent she had presented new evidence, she had provided no satisfactory explanation for her failure to present it with the original motion. Aubin also submitted a declaration reiterating that the broker had never suggested or even mentioned to him that the listing date should be postponed. He also contended that Kay should be sanctioned for filing the motion under section 1008, subdivision (d).

In his order filed September 6, 2006, the trial judge stated at the outset that "[w]hen I ruled on this case in July[,] I completely missed the most important point. At that time the parties were not seriously contesting whether the real estate broker had asked to have the listing delayed. Now that I realize the true situation, [Kay's] somewhat 'oblique' statement in her declaration does make sense." He went on to say that he had reread Aubin's opposition to the original motion, and that the thrust of Aubin's argument at that time was not that the broker had failed to make the recommendation, but that Kay had not sought a court order authorizing the delay.

The remaining body of the trial judge's order of September 6, 2006, reads as follows: "Although a party who makes a motion under [s]ection 1008 must strictly follow the requirements of that section in bringing the motion, the court has inherent authority to correct a mistaken ruling if this is done before the ruling becomes final. So, if the court clearly made a mistake in interpreting what the parties were contending at an earlier hearing, the injustice can be fixed. See *Darling, Hall & Rae v. Kritt* [(1999)] 75 Cal.App.4th 1148, 1156 [89 Cal.Rptr.2d 676] . . . . [¶] I find that there never was a legitimate dispute about whether . . . the broker[] had recommended that the listing be delayed. I do not buy the suggestion made at the last hearing that there really was a genuine dispute about this. [¶] As to the issue that the parties were actually arguing at the July hearing—whether [Kay] had to apply to the court for an order extending the listing or else the delay would not be excuse[d]—my answer is no. She did not have to go to court to be excused from the delay as long as the broker had recommended it."

The court concluded by ordering that: "The motion for reconsideration is granted. [Kay] is entitled to the [listing] bonus. [¶] Neither party is awarded

attorney fees or sanctions with regard to this matter." On November 6, 2006, Aubin filed a timely notice of appeal from this order.[3]

## III.

## DISCUSSION

■ As both parties to this appeal recognize, the controlling California Supreme Court case on the issue of a trial court's authority to reconsider an order on its own motion is *Le Francois, supra,* 35 Cal.4th 1094. In *Le Francois,* the defendants' motion for summary judgment was denied. More than a year later, some of the same defendants moved for summary judgment on the same grounds, and this time a different judge granted the motion. The Supreme Court granted review to resolve a conflict between the Courts of Appeal regarding whether a trial court could reverse its own earlier ruling on a motion under its inherent power, despite language in section 1008, subdivision (e), purporting to deprive courts of jurisdiction to do so.[4] The court concluded that section 1008, as well as a similar provision in the summary judgment statute (Code Civ. Proc., § 437c, subd. (f)(2)) (the reconsideration statutes),[5] would violate separation of powers principles unless they were interpreted to "prohibit a *party* from making renewed motions not based on new facts or law, but . . . not [to] limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question." (*Le Francois, supra,* 35 Cal.4th at pp. 1096–1097, original italics; see also *id.* at pp. 1103–1107.)

Nonetheless, the Supreme Court reversed, because in the case before it, the record reflected that the second judge had not acted on his own motion, but rather, had granted the defendants' renewed summary judgment motion even though that motion did not comply with the reconsideration statutes. (*Le Francois, supra,* 35 Cal.4th at p. 1109.) In reaching this result, the court

---

[3] Kay does not dispute that the order is appealable as a postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2).

[4] Section 1008, subdivision (e), provides as follows: "(e) This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section."

[5] The present case does not involve summary judgment, so we express no opinion as to whether our holding in this case would apply to a trial court's reconsideration of a summary judgment ruling. We note, however, that in *Le Francois, supra,* 35 Cal.4th at page 1099, the court stated that for the purpose of the question before it in that case, "the two [reconsideration] statutes say essentially the same thing . . . ."

explained that "[w]e cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling . . . ," and that "it should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Id.* at p. 1108.)

In this case, although the trial court's reconsideration of its earlier order was not the result of "an unprovoked flash of understanding" on the part of the judge, it clearly was intended to correct an order that the court had come to believe was erroneous. While ordinarily that should end the analysis, Aubin refers to the next paragraph of the Supreme Court's opinion in *Le Francois*, where the court noted that "[u]nless the requirements of [the reconsideration statutes] are satisfied, any action to reconsider a prior interim order must formally begin with the court *on its own motion*." (*Le Francois*, *supra*, 35 Cal.4th at p. 1108, original italics.) Because the trial court's action was prompted by Kay's motion for reconsideration, which the order stated was being "granted," Aubin argues that the reconsideration did not "formally begin with the court on its own motion."

In response, Kay points out that despite the wording of the order, it is clear that the judge was firmly convinced he had made an error, and intended, by his order granting reconsideration, to correct that error. Moreover, the judge recognized the problem posed by section 1008,[6] and expressly relied on the court's inherent authority in changing its earlier ruling. Thus, Kay relies on the Supreme Court's statement in *Le Francois* that it does not matter how the trial court came to believe its order was wrong. (*Le Francois*, *supra*, 35 Cal.4th at p. 1108.)

■ We conclude that *Le Francois* simply requires that the trial court reconsider a prior ruling based on its own realization that the ruling was erroneous, and not based upon a determination that the motion to reconsider should itself be granted on its merits. Aubin contends that even so, the trial judge went beyond what is permitted by *Le Francois*, in that he did not reverse himself solely because his prior ruling was in error, but instead took into consideration the "new" evidence submitted with Kay's motion for reconsideration.

We do not find any factual support in the record for this contention. Moreover, while it is true that the judge's order stated that the motion for

---

[6] Kay does not seriously argue on this appeal that her motion met the requirements of section 1008. For the purpose of this opinion, we assume that the trial court was correct in ruling (at least impliedly) that it did not.

reconsideration was being granted, in context, it is clear that the judge's intent was to grant reconsideration on the court's own motion. The court based its decision to reconsider on the court's inherent authority to do so, once it realized that a mistake had been made. Kay's motion for reconsideration was brought on the "new evidence" that the broker had agreed to the delay in listing, and the motion was supported by a declaration from the broker to that effect. However, the judge stated that the basis for his ruling was his rereading of the papers submitted with the original motion, and the order did not rely on or even mention Kay's additional evidence. The evidence submitted with the original motion is clearly sufficient to support the court's ultimate ruling that Kay was entitled to the listing bonus, and Aubin does not argue otherwise on appeal.[7] In light of these circumstances, we conclude that in stating that Kay's motion for reconsideration was "granted," the court simply meant that it was providing the *relief* sought by the motion, and did not mean to say that it was granting the motion itself.

Nonetheless, Aubin argues that an order granting reconsideration must be reversed if its issuance was prompted by the filing of a motion for reconsideration that did not meet the requirements of the reconsideration statutes. We disagree. There is nothing in the Supreme Court's opinion in *Le Francois* that justifies this conclusion. To the contrary, an examination of the result in *Le Francois* provides support for the opposite conclusion. Although the court reversed the order granting summary judgment on reconsideration, it also declined to hold that the case had to go to trial. Instead, it expressly stated that "[o]n remand, nothing prohibits the court from reconsidering its previous ruling on *its own motion*, a point on which we express no opinion." (*Le Francois, supra*, 35 Cal.4th at p. 1109, original italics, fn. omitted.) Thus, it is clear that a party's filing of a motion for reconsideration in violation of the reconsideration statutes does not erect a permanent, insurmountable barrier to reconsideration by the trial court on its own motion.

Furthermore, both of the cases on which Aubin relies in support of his argument to the contrary are distinguishable. In *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368 [130 Cal.Rptr.2d 754] (*Kerns*), the defendant insurer filed a motion for summary judgment that was denied by the law and motion judge. (*Id.* at pp. 377–378.) When the case was assigned to a different judge for trial, the parties waived jury trial, and stipulated that the parties could file cross-motions for summary judgment or summary adjudication. The

---

[7] In addition to the "oblique" statement in Kay's original declaration that the "broker had no choice but to suggest that the listing be delayed," Kay also stated, not at all obliquely, that "the broker made sensible decisions to postpone the listing in view of [Aubin's] failure to perform the work he was supposed to do"; that she herself had met both of the conditions for the listing bonus; and that she had done "everything [she] could to get this house sold and [was] entitled to the [listing] bonus."

defendant then simply refiled its original summary judgment motion, verbatim, without any additional evidence or argument. (*Id.* at pp. 378–379, 382–383.) The trial judge granted the motion, and the plaintiff appealed.

The Court of Appeal reviewed the case law regarding whether section 1008 was jurisdictional—an issue that had not yet been resolved by the Supreme Court at that time—and agreed with those courts that had held "that trial courts have the inherent power to reconsider and correct their own interim decisions in order to achieve substantial justice. [Citations.]" (*Kerns, supra,* 106 Cal.App.4th at p. 388.) Nonetheless, the court reversed the trial court's order granting summary judgment, because "[a]s applied to the circumstances of this case—in which [the law and motion judge's] previous denial of summary judgment was clearly put in issue not on the trial court's own motion but instead by . . . [the defendant's] verbatim reapplication for summary judgment—the provisions of section 1008 were jurisdictional and controlling." (*Id.* at p. 391.) The defendant's actions, the court held, were "difficult to distinguish . . . from the kind of brazen forum shopping section 1008 is specifically intended to bar. [Citation.]" (*Ibid.*) In addition, the court found that the trial judge's ruling was substantively incorrect. (*Id.* at pp. 394–395.) Accordingly, the court reversed the order granting summary judgment, and remanded for further proceedings. (*Id.* at p. 397.)

The present case, in contrast, does not involve any possibility of forum shopping, because the judge was reconsidering his own earlier order. Moreover, Aubin does not argue on appeal that the judge's second ruling was substantively incorrect. Accordingly, the "circumstances of this case" (*Kerns, supra,* 106 Cal.App.4th at p. 391) are entirely different from those that persuaded the court in *Kerns* to reverse the trial judge's order granting reconsideration despite its conclusion (anticipating *Le Francois, supra,* 35 Cal.4th 1094) that section 1008 is not jurisdictional.

Aubin argues that in order to affirm in this case, we would have to follow *Remsen v. Lavacot* (2001) 87 Cal.App.4th 421 [104 Cal.Rptr.2d 612] (*Remsen*), notwithstanding our own disavowal of its result in *Kerns* (see *Kerns, supra,* 106 Cal.App.4th at p. 389), and the Supreme Court's subsequent disapproval of *Remsen* in *Le Francois.* (See *Le Francois, supra,* 35 Cal.4th at p. 1107, fn. 5.) We disagree.

In *Remsen, supra,* 87 Cal.App.4th 421, the trial court originally ordered the trustees of an estate to pay interest on specific bequests granted to certain beneficiaries. The trustees moved for reconsideration, arguing for the first time that if the beneficiaries covered by the order received interest, the estate would not have any funds left for the remainder beneficiaries, who were intended to be the primary beneficiaries of the trust. Thus, the trial court's

decision to reconsider its initial order was based on facts that could have been, but were not, presented in connection with the original motion. Moreover, unlike in this case, the trial court in *Remsen* did not characterize its initial decision as having been erroneous based on the original moving papers. Instead, it stated without qualification that whether reconsideration is granted sua sponte or in response to a party's motion is "a distinction without a difference" and " 'constitutionally immaterial' " (*id.* at p. 427). In this respect, we agree with the *Kerns* and *Le Francois* decisions that the *Remsen* court went too far. Here, however, the trial court reconsidered its prior ruling based upon facts appearing in the original motion, and decided it had been in error. Thus, *Remsen* is distinguishable.

The second case on which Aubin relies is *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206 [37 Cal.Rptr.3d 338] (*New York Times*). In that case, the trial court granted summary judgment to the defendant, but then granted the plaintiff's motion for reconsideration, permitting some of the plaintiff's causes of action to proceed, and vacating its grant of summary judgment in favor of the defendant on its cross-complaint. The motion for reconsideration was based on evidence which the plaintiff had available to it at the time it opposed the original summary judgment motion, but decided not to rely on. (*Id.* at pp. 212–215.)

The defendant petitioned for a writ of mandate directing the trial court to vacate its order granting reconsideration, and to reinstate the original summary judgment. While the writ proceeding was pending in the Court of Appeal, the Supreme Court decided *Le Francois, supra,* 35 Cal.4th 1094. In opposition to the writ petition, the plaintiff argued that under *Le Francois,* the trial court had jurisdiction to grant reconsideration because it had acted on its own motion. The trial court's order gave no indication, however, that in granting the motion for reconsideration, it was prompted by anything other than the motion itself. (*New York Times, supra,* 135 Cal.App.4th at p. 215; see also *id.* at p. 208 ["The trial court may grant reconsideration on its own instance, but that is not what happened in this case."].) Accordingly, the Court of Appeal rejected the plaintiff's argument, and issued a writ of mandate directing the trial court to reinstate its original order.

The case before us is clearly distinguishable. In *New York Times,* there was nothing in the record indicating that the trial court believed its original ruling was in error. Here, by contrast, the trial court explicitly stated that it was reversing its original ruling based on its inherent authority to correct an

erroneous decision, and expressly relied on case law (*Darling, Hall & Rae v. Kritt, supra*, 75 Cal.App.4th 1148) authorizing it to do just that.[8]

Aubin alternatively argues that under *Le Francois*, a trial court has inherent authority only to reconsider "interim" rulings, citing the footnote in that case stating that "[w]hat we say about the court's ability to reconsider interim orders does not *necessarily* apply to final orders, which present quite different concerns." (*Le Francois, supra*, 35 Cal.4th at p. 1105, fn. 4, italics added & omitted.) Aubin notes that the ruling in this case was an appealable postjudgment order, and therefore not "interim."

■ We read the Supreme Court's footnote simply as a cautionary statement that its holding in *Le Francois* may not apply to *all* final orders, an issue not examined in that case inasmuch as the order under review was interim. In fact, the plain language of subdivision (e) of section 1008 states that "[t]his section . . . applies to all applications to reconsider any order . . . , whether the order . . . is interim or final." (See *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 [46 Cal.Rptr.2d 177] ["For purposes of a motion for reconsideration, it does not matter whether the order attacked is an interim one or whether it is final. (Code Civ. Proc., § 1008, subd. (e).)"].) Given that section 1008 itself draws no distinction between the reconsideration of interim and final orders, both general types of orders are encompassed by section 1008, absent one presenting special concerns to which our high court alluded in its footnote.

Our conclusion that a court may reconsider final as well as interim orders on its own motion is also supported by the legislative history of the 1992 amendments to section 1008, which the *Le Francois* court was construing. (See *Le Francois, supra*, 35 Cal.4th at pp. 1098–1099.) These amendments were introduced with the following statement of intent: "The Legislature finds and declares the following: [¶] (a) Since the enactment of Section 1008 of the Code of Civil Procedure, some California courts have found that the section does not apply to interim orders. [¶] (b) In enacting Section 4 of this act, it is the intent of the Legislature to clarify that no motions to reconsider any order made by a judge or a court, whether that order is interim or final, may be heard unless the motion is filed within 10 days after service of written notice

---

[8] *Darling, Hall & Rae v. Kritt, supra*, 75 Cal.App.4th 1148 is a pre-*Le Francois* decision which anticipated the Supreme Court's later holding confirming a trial court's inherent authority to reconsider an order on its own motion. (See *id.* at pp. 1156–1157 ["[S]ection 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings. [Citation.] Instead, the trial court retains the inherent authority to change its decision at any time prior to the entry of judgment. [Citation.]"].) The initial losing party in that case did not file a motion for reconsideration, however, and the court's reconsideration was based only on the papers filed with the original motion. (*Id.* at pp. 1153–1154.) Thus, that case did not resolve the issue presented here.

of entry of the order, and unless based on new or different facts, circumstances, or law. [¶] (c) In enacting Section 4 of this act, it is the further intent of the Legislature to clarify that no renewal of a previous motion, whether the order deciding the previous motion is interim or final, may be heard unless the motion is based on new or different facts, circumstances, or law. [¶] (d) Inclusion of interim orders within the application of Section 1008 is desirable in order to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state." (Stats. 1992, ch. 460, § 1, p. 1831.) This statement makes clear that in amending section 1008 to add the language making that statute exclusive and jurisdictional, the Legislature intended it to apply to interim and final orders alike. Thus, the fact that the order in this case was issued after judgment, and in that sense was "final,"[9] does not take it outside the ambit either of section 1008, or the construction given to that statute by the Supreme Court in *Le Francois*.

■ Finally, we note that shortly after the completion of briefing in this case, our colleagues in the Third District held that even if a trial judge errs in granting reconsideration, "that error cannot be deemed reversible without reaching the merits of the . . . issue" on which the court ruled. (*People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 634 [65 Cal.Rptr.3d 130] (*Jones*).) As the *Jones* court noted (*ibid.*), section 13 of article VI of the California Constitution precludes the reversal of a judgment " 'for any error as to any matter of procedure, unless, after an examination of the entire cause . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' " We agree with the reasoning in *Jones*. In our view, the California Constitution requires that in any case in which a trial judge reconsiders an erroneous order, and enters a new order that is substantively correct, the resulting ruling must be affirmed regardless of any procedural error committed along the way. Because section 1008 must be construed to be consistent with constitutional principles (*Le Francois, supra*, 35 Cal.4th at pp. 1104–1105), it cannot be interpreted to preclude this result.[10] (See also *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 110–115, 119 [50 Cal.Rptr.3d 208] [juvenile dependency court had inherent

---

[9] In another sense, however, the original order was *not* yet "final" at the time the judge reconsidered it, because the time to appeal it had not yet expired. Thus, this appeal does not present, and we therefore do not decide, the issue whether a trial court can reconsider an appealable order on its own motion after the time to appeal from that order has expired. This circumstance may well have been the issue the Supreme Court had in mind when it indicated in *Le Francois* that ". . . final orders . . . present quite different concerns" from interim orders. (*Le Francois, supra*, 35 Cal.4th at p. 1105, fn. 4, italics omitted.)

[10] In *Le Francois*, the majority of the court rejected Justice Kennard's view that the error committed by the trial court in that case was harmless. It did so, however, because the issue had not been briefed on appeal, and in addition, the trial court had not given the parties an opportunity to be heard before reversing its ruling, and the court "[did] not know what would have occurred if it had done so." (*Le Francois, supra*, 35 Cal.4th at p. 1109, fn. 6.) In the present case, the parties briefed the issue whether reconsideration was warranted in the trial

authority to reconsider order granting reunification services to incarcerated, abusive father, and procedural irregularity in manner in which court reached that result was harmless error].)

■ In closing, we recognize that our holding in this case gives the goal of allowing the courts to do substantial justice priority over the competing goal of conserving judicial resources.[11] At oral argument, Aubin's counsel argued that affirming the result in this case would encourage counsel to file frivolous motions for reconsideration. We recognize the validity of this concern, and caution that our opinion must not be read as condoning the filing of unwarranted motions for reconsideration in the hope that it sparks trial courts to change rulings on their own initiative. We believe, however, that trial courts have the tools at their disposal to deal with this issue if it should arise. The threat of assiduous enforcement of the provisions for sanctions and contempt in subdivision (d) of section 1008 should be sufficient to deter parties from filing motions for reconsideration that do not meet the strictures of that statute.[12] In addition, we stress that in order to grant reconsideration on its own motion, the trial court must conclude that its earlier ruling was wrong, and change that ruling *based on the evidence originally submitted.* Thus, our ruling does not permit parties to obtain reconsideration relying on evidence that could and should have been, but was not, presented to the court in connection with the original motion.

---

court, and that court held a hearing before reversing its earlier ruling. Moreover, unlike the *Le Francois* court, we have the benefit of a record that makes clear that even if we were to remand this matter to allow the trial court to reconsider the issue on its own motion, it would reach the same result again.

[11] " '[T]he stated legislative purpose behind the 1992 amendment to section 1008 was to conserve judicial resources. . . . This legislative purpose is advanced if section 1008 is understood to apply to the actions of the parties, not to a court's sua sponte reconsideration of its own interim order. When the court rules upon a party's motion, it is to be expected that the losing party will often feel the court has erred, and therefore may be inclined to seek reconsideration if such a procedure is readily available. Thus, absent section 1008, trial courts might find themselves inundated with reconsideration motions requiring that they rehash issues upon which they have already ruled and about which they have no doubt. Section 1008, properly construed, protects trial courts from being forced to squander judicial time in this fashion. We think it would be a much less common occurrence, however, that a trial court would sua sponte conclude that its prior ruling was erroneous and seek to modify it. Forcing the parties to proceed where there is recognized error in the case would result in an enormous waste of the court's and the parties' resources.' [Citation.]" (*Le Francois, supra,* 35 Cal.4th at pp. 1106–1107.)

[12] Subdivision (d) of section 1008 provides that: "(d) A violation of this section may be punished as a contempt and with sanctions as allowed by Section 128.7. In addition, an order made contrary to this section may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending."

## IV.

## DISPOSITION

The trial court's order is affirmed. Kay is awarded her costs on appeal.

Reardon, J., and Rivera, J., concurred.