[No. G041551. Fourth Dist., Div. Three. Dec. 23, 2009.]

D.R.S. TRADING COMPANY, INC., Plaintiff and Appellant, v.
VAUGHN BARNES et al., Defendants and Respondents.

**COUNSEL**

Pestotnik & Gold, Russell A. Gold; Luce, Forward, Hamilton & Scripps and Charles A. Bird for Plaintiff and Appellant.

Law Offices of Thomas E. Francis, Thomas E. Francis; Bohm, Matsen, Kegel & Aguilera and Raymond E. Brown for Defendants and Respondents.

OPINION

**BEDSWORTH, Acting P. J.**—Our task here is to harmonize Code of Civil Procedure sections 1008 and 473, subdivision (b). D.R.S. Trading Company, Inc. (D.R.S.), appeals from an order vacating a default and judgment entered against Vaughn Barnes and Elsa Barnes (the Barneses), contending that after the trial court initially denied the Barneses' motion for relief from default, it lacked jurisdiction to hear their motion for reconsideration of that denial. D.R.S. does not challenge the merits of the court's reconsideration decision, but instead asserts only that the court has no power to reconsider any decision under Code of Civil Procedure section 1008 (section 1008), after a judgment has been entered.

We are not persuaded. D.R.S.'s contention confuses the court's power to reconsider the merits of the entered judgment itself—or to reconsider interim orders which have been subsumed within that judgment—with its power to reconsider an order which it is specifically authorized to make, in the first instance, *after* entry of the judgment under Code of Civil Procedure section 473, subdivision (b). We are unconvinced by the contention the existence of a judgment somehow precludes the court from reconsideration of a motion it is explicitly empowered to consider after judgment. Consequently, the order is affirmed.

## FACTS

The complaint in this action was filed in San Diego Superior Court. In ·October of 2007, the parties, through their respective counsel, stipulated to transfer the case to Orange County Superior Court. On January 22, 2008, D.R.S. gave notice to the Barneses, through their counsel, that the matter had been transferred there and assigned to a court.

On February 27, 2008, D.R.S. notified the Barneses' counsel that there was no indication in the court's file that their responsive pleading had been filed, and stated their default would be taken on February 29, 2008, if no such pleading had been served and filed by that date. Apparently, counsel orally promised to file and serve the pleading by that deadline.

However, no responsive pleading was filed, and thus on March 12, 2008, the court clerk entered the Barneses' default. A judgment based upon that default, in the amount of $849,000, was entered July 18, 2008.

After the Barneses learned of the default judgment, they hired new counsel to seek relief from that judgment. The Barneses' new counsel spoke to their prior counsel, who apparently conceded fault in the matter, and promised to

sign a declaration to that effect. However, despite several more attempts, new counsel was unable to obtain that declaration prior to filing a motion for relief from default under Code of Civil Procedure section 473.

The initial motion for relief from default was heard on September 25, 2008. The court denied the requested relief, explaining that "at this point in time, without a mandatory attorney affidavit, I don't find excusable neglect and I'm denying this motion." The court noted that the Barneses' remedy would be "to sue [prior counsel] if he is not going to give an affidavit of . . . fault. If it was, in fact, his responsibility to provide the respons[ive] pleading, then certainly he is subject to a malpractice suit."

After the court's ruling, the Barneses' new counsel informed their prior counsel of what had occurred. And, on October 1, 2008, the attorney finally supplied the missing declaration, in which he acknowledged the failure to file a responsive pleading in the case had been the result his own "mistake, inadvertence, surprise or neglect. . . ."

Relying upon the attorney's declaration as new evidence, the Barneses promptly moved for reconsideration of the court's order denying their request for relief from default. D.R.S. opposed the motion, arguing the court lacked jurisdiction to reconsider any of its orders after judgment had been entered.[1]

In their reply brief, the Barneses conceded that based upon the authorities cited by D.R.S., it did "appear" the court did not have authority to reconsider its denial of relief under section 1008, but argued that even if that were true, the court could nonetheless treat the reconsideration motion as either a motion to vacate the judgment or a motion for new trial, and grant relief on that basis.

At oral argument, the court flatly rejected the notion that it lacked authority to reconsider its decision under section 1008. As the court pointed out "[t]he court grants motions to set aside default judgments all of the time after they have been entered. I don't understand the argument, why the court has no jurisdiction to do that." The court then cited *Tunis v. Barrow* (1986) 184 Cal.App.3d 1069 [229 Cal.Rptr. 389], to support its conclusion that an order denying a motion for relief from default can be reconsidered, and granted the motion. As part of its order, the court awarded D.R.S. fees and costs of $12,123, in connection with the unnecessary default proceedings.

---

[1] D.R.S. also argued that even if the court had jurisdiction to hear the reconsideration motion, it should "exercise its discretion" to deny relief on the basis that to do otherwise would encourage defendants to seek relief one time without supplying an attorney affidavit, knowing they will be given a second opportunity to supply that affidavit should the first attempt fail. That argument has not been repeated on appeal.

## DISCUSSION

The sole contention made by D.R.S. on appeal is that the court had no jurisdiction to reconsider its order denying the Barneses relief from default, because section 1008 authorizes reconsideration only "before final judgment is entered and while the case is still pending in the trial court. [Citations.]" (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 937–938 [20 Cal.Rptr.2d 841] (*Betz*).)

However, in *Betz*, the moving party had sought to vacate a judgment which had not only been entered, but *was already on appeal*. Thus, the precise issue raised in that case was whether "the trial court had jurisdiction under section 1008, subdivision (b) to vacate the judgment *after the notice of appeal had been filed* . . . ." (*Betz, supra*, 16 Cal.App.4th at pp. 937–938, italics added.) In concluding it did not, the *Betz* court relied upon the "general rule [that] 'the perfecting of an appeal stays [the] proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . .' (§ 916, subd. (a).)" (*Betz, supra*, 16 Cal.App.4th at p. 938.) The court explained "[t]he purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it. [Citation.]" (*Ibid.*)

In this case, in contrast to *Betz*, there was no appeal pending at the time the Barneses sought reconsideration of the court's denial of their motion to vacate, and thus the general prohibition against interference with *appellate court* jurisdiction does not pertain.

Moreover, although *Betz* does suggest there also exists a general prohibition against trial courts' reconsideration of *any* orders after entry of the trial court's judgment (whether or not pending on appeal), neither that case nor any of the other cases it relies upon for the point supports the broad proposition. Both *Betz* and *Eddy v. Sharp* (1988) 199 Cal.App.3d 858 [245 Cal.Rptr. 211], are cases in which the court was being asked to reconsider the merits of the judgment itself. Thus, the *Eddy* court made the specific point that "[a]fter a summary judgment the methods of attacking *the judgment* are by a motion for new trial, and appeal. [Citations.]" (*Id.* at p. 863, fn. 3, italics added; see also *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1606 [275 Cal.Rptr. 887] ["Once judgment has been entered . . . the court may not reconsider *it* and loses its *unrestricted* power to *change the judgment*. It may correct judicial error only through certain limited procedures such as motions

for new trial and motions to vacate the judgment." (first & third italics added)]; *Ten Eyck v. Industrial Forklifts Co.* (1989) 216 Cal.App.3d 540 [265 Cal.Rptr. 29] [motion for reconsideration of summary judgment order cannot be made after entry of the judgment].) In this case, however, the Barneses were seeking reconsideration not of the merits of the judgment itself, but of their postjudgment motion for relief from default. Thus, neither *Eddy, Passavanti,* nor *Ten Eyck* is on point.

The *Betz* court also cited *Magallanes v. Superior Court* (1985) 167 Cal.App.3d 878, 882 [213 Cal.Rptr. 547], which involved a *pretrial* motion for reconsideration of an order striking the plaintiff's punitive damages allegations. Thus, the court's statement that "[t]he trial court had power to reconsider the ruling so long as no final judgment had been entered and the case was still pending before the court" related specifically to the court's authority to reconsider interim orders which later became *subsumed within the judgment.* (*Ibid.*) That court had no occasion to address the court's jurisdiction to reconsider an order—such as one relieving a party from default—which it is specifically authorized to make in the first instance *after judgment has been entered.*[2]

■ In this case, Code of Civil Procedure section 473, subdivision (b), specifically authorized the court to grant the Barneses relief from the judgment taken against them—if it was the result of mistake, inadvertence, surprise or excusable neglect—for up to six months after entry of that judgment. Clearly then, the existence of the judgment itself is no bar to relief—indeed, it is a prerequisite. ■ And there is nothing in the language of section 1008 which limits the court's reconsideration authority to pretrial—i.e., "interim"—orders. To the contrary, subdivision (e) of section 1008 specifies that it "applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion *is interim or final.*" (Italics added.)

Thus, in *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308 [70 Cal.Rptr.3d 691] (*Barthold*), the court expressly rejected the appellant's assertion that a trial court had authority to reconsider only "interim" decisions, and could not grant reconsideration of a postjudgment motion. As the *Barthold* court explained: "[T]he plain language of subdivision (e) of section 1008 states that '[t]his section . . . applies to all applications to reconsider any

---

[2] The *Betz* court also cited *Graham v. Hansen* (1982) 128 Cal.App.3d 965 [180 Cal.Rptr. 604], which involved a pretrial *renewal* of a motion for summary judgment. The *Graham* opinion simply explains the distinction between a motion for reconsideration, which must be made within 10 days, and a renewal of a previously denied motion—otherwise referred to as "subsequent applications for the same order"—which is not subject to the same time limitation. (*Id.* at p. 970.)

order . . . , whether the order . . . is interim or final.' (See *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 [46 Cal.Rptr.2d 177] ['For purposes of a motion for reconsideration, it does not matter whether the order attacked is an interim one or whether it is final. (. . . § 1008, subd. (e).)'].)" (*Barthold, supra*, 158 Cal.App.4th at p. 1312.)

The *Barthold* court's rejection of the notion that reconsideration was limited to pretrial, or "interim," orders is squarely supported by the legislative history of the 1992 amendments to section 1008. Indeed, as explained in the statement of intent which accompanied those amendments, the Legislature's concern was that courts had previously interpreted the statute's limitations as applying *only* to final orders, and thus the Legislature wished to clarify that it applied to interim orders as well: " 'The Legislature finds and declares the following: [¶] (a) Since the enactment of [s]ection 1008 . . . , some California courts have found that the section does not apply to interim orders. [¶] (b) In enacting [s]ection 4 of this act, it is the intent of the Legislature to clarify that no motions to reconsider any order made by a judge or a court, whether that order is interim or final, may be heard unless the motion is filed within 10 days after service of written notice of entry of the order, and unless based on new or different facts, circumstances, or law. [¶] (c) In enacting [s]ection 4 of this act, it is the further intent of the Legislature to clarify that no renewal of a previous motion, whether the order deciding the previous motion is interim or final, may be heard unless the motion is based on new or different facts, circumstances, or law. [¶] (d) Inclusion of interim orders within the application of [s]ection 1008 is desirable in order to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state.' (Stats. 1992, ch. 460, § 1, p. 1831.)" (*Barthold, supra*, 158 Cal.App.4th at pp. 1312–1313.)

Hence, as the *Barthold* court explained, "[t]his statement makes clear that in amending section 1008 to add the language making that statute exclusive and jurisdictional, the Legislature intended it to apply to interim and final orders alike. Thus, the fact that the order in this case was issued after judgment, and in that sense was 'final,' does not take it outside the ambit . . . of section 1008 . . . ." (*Barthold, supra*, 158 Cal.App.4th at pp. 1312–1313, fn. omitted.)

█ We agree with the reasoning in *Barthold*. It is clear that section 1008 allows the trial court to reconsider not only its interim orders which might later be incorporated into the judgment, but also to reconsider orders made after the judgment, as long it does so in accordance with the requirements of the statute. We have no quarrel with the cases which hold that section 1008 does not operate as an additional method for challenging the merits of the judgment itself, but as this case does not involve such a challenge, we do not view those cases as pertinent to our analysis.

## DISPOSITION

The order is affirmed, and the Barneses are to recover their costs on appeal.

Aronson, J., and Ikola, J., concurred.