Filed 9/21/21  Schuldner v. InComm Fin. Services CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| STANLEY SCHULDNER, Cross-Complainant and Appellant, v. INCOMM FINANCIAL SERVICES, INC ET AL., Plaintiff and Respondents. | A160691 (San Francisco County Super. Ct. No. 15-514368) |

Appellant Stan Schuldner appeals from an order awarding respondents InComm Financial Services, Inc. and The Bancorp Bank (usually collectively respondents) costs in the amount of $6,590.17.  The award was against the background that the trial court had recognized that the costs were proper, but originally granted Schuldner's motion to tax because respondents had not provided evidence demonstrating that the costs were in fact incurred.  Respondents sought reconsideration, and the court ruled in their favor, in a thoughtful order explaining why.

We affirm that order, and thus bring to a close this aspect of the litigation, a litigation that has now gone on for six years—and generated a register of actions that contains over 750 entries.  Enough is enough.

1

# BACKGROUND

**The General Setting**

We have earlier described this case in our unpublished opinion filed on January 16, 2018: *Schuldner v. ITC Financial Licenses, Inc.* (Jan. 16, 2018, A150522) [nonpub. opn.].[1] There, we rejected an earlier appeal by Schuldner and affirmed a judgment in favor of Office Depot, an opinion from which we occasionally quote, beginning with this description of the "**Origins of This Dispute:**

"This case arises out of Schuldner's scheme to generate credit card rewards points by purchasing gift cards on credit and returning the cards for cash. Pursuant to this scheme, Schuldner purchased 'Do It Yourself Home Improvement' gift cards, each worth $500, in quantities of 10 to 20 at a time from an Office Depot store in San Francisco. He did not, however, intend to actually use the gift cards to purchase home improvement goods or services. Instead, he would immediately mail them to the issuer, ITC Financial Licenses, Inc. (ITC), for a cash refund of the purchase price. From October 2013 to January 2014, he purchased at least 130 gift cards totaling $65,000.

"ITC's auditors eventually discovered Schuldner's scheme and determined he was violating the terms of the cardholder agreement governing use of the cards. Relying on the terms of the agreement, ITC declined to issue Schuldner any further refunds, leaving $32,499 in outstanding gift cards. After notifying Schuldner of its decision not to issue

---

[1] This background is based in significant part on our earlier opinion and also on the register of actions in this case, as to both of which we take judicial notice on our own motion. (Evid. Code, §§ 452, subd. (d), 459; *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 45 [sua sponte judicial notice].)

cash refunds for the outstanding cards, ITC attempted to return the cards to Schuldner, but he refused the delivery.

"**The Arbitration**

"Schuldner initiated an arbitration against ITC, seeking a cash refund for the outstanding gift cards, plus interest and punitive damages. In a decision dated June 12, 2015, the arbitrator ruled in ITC's favor, finding that Schuldner had purchased the cards in bad faith and his scheme violated the terms and conditions of the cardholder agreement. According to the arbitrator, Schuldner's 'sole intention was to generate credit card reward points without spending any of his own money' and he 'candidly acknowledged that he never had any intention of using the Home Improvement gift cards for their intended purpose.'

"The arbitrator ordered ITC to return the full value of the outstanding gift cards ($32,499), expressly stating that Schuldner was responsible for accepting delivery. When ITC attempted to return the cards, however, Schuldner refused to accept them.

"**ITC's Petition to Confirm the Arbitration Award and Schuldner's Cross-Complaint**

"ITC filed a petition to confirm the arbitrator's award. On September 14, 2015, the court granted the petition and confirmed the award. That same day, Schuldner filed a document entitled 'Respondent's Petition to Vacate; and Respondent's Counter Claim—Civil Action.'

"In the cross-complaint, Schuldner alleged that since approximately 2012, ITC had published on its website a cardholder agreement that provided the buyer could return the cards for a refund, as well as 'notices and advertisements that the gift cards it was selling could be used at various merchants including at BenjaminMoore.com.' He further alleged that in or

3

about June 2015 and on various other dates, he 'went to BenjaminMoore.com and noticed that it says it does not accept the gift cards.' According to Schuldner, he served ITC with a notice of violation of the Consumer Legal Remedies Act (CLRA) arising out of its false advertising concerning where the gift cards could be used, but ITC never responded. The cross-complaint asserted four causes of action against ITC: (1) violation of the CLRA; (2) breach of contract; (3) account stated; and (4) unjust enrichment." (Fns. omitted.)

Schuldner obtained leave to file a first amended cross-complaint (FACC), which added The Bancorp Bank (Bancorp) and Office-Depot as cross-defendants. The FACC purported to allege 12 causes of action against all three cross-defendants: (1) violation of the CLRA; (2) breach of contract (for failure to honor the cancellation clause in the cardmember agreement and because the cards could not be used on the Benjamin Moore website and in all stores); (3) account stated; (4) unjust enrichment; (5) false advertising in violation of Business and Professions Code section 17200 (section 17200); (6) fraud; (7) conversion; (8) violation of Penal Code section 496; (9) breach of fiduciary duty; (10) negligent misrepresentation; (11) constructive trust; and (12) civil conspiracy. The FACC also asserted class action allegations.

Respondents demurred to the FACC. As to the four claims based on claimed misrepresentations, the court sustained the demurrer with leave to amend. As to the remaining eight claims, the court sustained the demurrer without leave to amend.

On June 28, 2016, Schuldner filed a second amended cross-complaint (SACC). As we earlier described: "The SACC realleged the four misrepresentation-based causes of action against all defendants: violation of the CLRA (count 1); false advertising in violation of section 17200 (count 2);

4

fraud (count 3); and negligent misrepresentation (count 14). And it alleged three new causes of action against all defendants: recission (count 4), declaratory relief (count 5), and negligence (count 12).

"Additionally, the SACC reasserted against all cross-defendants the six causes of action the court had dismissed with prejudice as to ITC and Bancorp, that is breach of contract for misrepresenting where the cards could be used (count 6), breach of contract for failure to give a refund after the arbitration (count 8), account stated (count 9), unjust enrichment (count 10), conversion (count 11), and violation of Penal Code section 496 (count 13). As to Office Depot and Bancorp only, the SACC also alleged breach of contract for failure to give a refund before the arbitration (count 7). [¶] . . . [¶]

"Office Depot demurred to the SACC, and the demurrer came on for hearing on August 30, 2016. At the outset of the hearing, the trial court observed that Schuldner had 'ignored' its previous rulings 'in large order.' Specifically, the court had granted leave to amend only the claims relying on the misrepresentation theory, but Schuldner had reasserted the causes of action the court had dismissed with prejudice. Concluding those claims still failed as a matter of law, the court sustained Office Depot's demurrer to those claims without leave to amend.

"As to the remaining claims, the court concluded that Schuldner had not alleged, and could not allege, a misrepresentation by Office Depot or his reliance on a misrepresentation by Office Depot, informing Schuldner, 'You don't have a claim against Office Depot here.' The court thus sustained Office Depot's demurrer without leave to amend.

"On October 5, 2016, the court entered judgment for Office Depot." Schuldner appealed. And we affirmed. (*Schuldner v. ITC Financial Licenses*, *supra*, A150522.)

5

Respondents had also demurred to the SACC, with the court hearing their demurrer the same day as Office Depot's. The court sustained their demurrer to the misrepresentation-based causes of action. Schuldner amended his complaint, respondents again demurred, and this time the court overruled the demurrer. Thus, four causes of action remained as to respondents: violation of the CLRA, false advertising in violation of section 17200, fraud, and negligent misrepresentation. So, while Office Depot was no longer in the case, it continued against respondents.

**The Proceedings Pertinent Here**

Schuldner moved to amend his cross-complaint, and on January 4, 2018, the court granted the motion, instructing Schuldner to label the new pleading the fifth amended cross-complaint. It was filed on January 12, named respondents as cross-defendants, and alleged the four causes of action noted above.[2]

On May 15, respondents filed a motion for summary judgment or, in the alternative, summary adjudication. That same day, Schuldner filed his own motion for summary judgment. The cross motions came on for hearing on August 28, before the Honorable Harold Kahn, a most experienced superior court judge. Judge Kahn permitted Schuldner to submit a supplemental brief for the purposes of citing authority or statutes, which brief was to be filed by September 4, on which date the motions would be deemed submitted.

On October 17, Judge Kahn filed his order granting summary judgment to respondents and denying Schuldner's motion. And on December 18, he entered judgment, holding that Schuldner "shall take nothing on his [fifth

---

[2] The fifth amended cross-complaint also named as a cross-defendant Reed Smith, the national law firm representing respondents.

6

amended] cross-complaint" and deemed respondents "the prevailing parties . . . entitled to costs per [the] costs memorandum."

On December 21, respondents filed a memorandum of costs, seeking $7,437.51, primarily costs of deposition.

On March 11, 2019, Schuldner filed a motion to tax. Respondents filed opposition, and the motion to tax came on for hearing before Judge Kahn on May 31. Though no transcript is in the record for that hearing—and from all indications no formal order was ever filed—it appears that Judge Kahn indicated from the bench that $6,590.17 in costs were in fact recoverable, but he would nevertheless tax them, on the basis that respondents had not attached a declaration with supporting documentation evidencing that the costs had actually been incurred.

On June 10, respondents filed a motion for reconsideration which among other things cited to Code of Civil Procedure section 473, subdivision (b). And in support of the motion respondents submitted new evidence in the form of receipts for the claimed costs. The motion also described why respondents had not presented the evidence earlier, explaining in its introduction that Schuldner's motion to tax was "almost entirely based on two arguments: (i) whether Mr. Schuldner was a prevailing party under the catalyst theory; and (ii) whether the costs incurred by [respondents] were necessary. Accordingly, counsel for [respondents] inadvertently misinterpreted a vague sentence on the fourth page of the motion as another challenge to whether the costs were recoverable, not as a challenge to the *amount* of the charges. Because counsel for [respondents] did not believe that Mr. Schuldner had challenged the amount of the charges, they did not attach supporting documentation for the charges to their opposition. . . . However, as Mr. Schuldner acknowledged in his reply in support of his motion, receipts

7

are not required as part of [respondents'] memorandum of costs, only in an opposition to a motion to tax costs, and thus such a declaration would in no way be untimely under the statute." And respondents' introduction concluded, "[Respondents] should not be prejudiced by their counsel's excusable failure to attach receipts to their opposition to Mr. Schuldner's motion because of their misinterpretation of a single sentence in Mr. Schuldner's vague motion."

On June 21, Schuldner filed opposition. Respondents filed a reply, and the motion came on for hearing on July 30. On October 10, Judge Kahn filed his order, holding for respondents. It was a thoughtful order indeed, providing in its substantive entirety as follows:

"On May 31, 2019, at the hearing on respondent and cross-complainant Stan Schuldner's[3] motion to tax the costs claimed by [respondents] ITC Financial Licenses, Inc. and The Bancorp, Inc. I orally granted Mr. Schuldner's motion and taxed all costs claimed by cross-defendants due to their failure to provide any receipts for their claimed costs. As far as I can tell, that oral order was never memorialized in a written order.

"On July 30, 2019, a hearing was held on [respondents'] motion for reconsideration of my May 31 order taxing all of their costs. At that hearing Mr. Schuldner represented himself and Matthew Wrenshall appeared (via CourtCall) for [respondents]. At the conclusion of the hearing I took the motion under submission so that I could more fully consider the parties' arguments. Having now reviewed all of the papers filed by the parties on Mr. Schuldner's motion to tax costs and [respondents'] motion for reconsideration, my notes of the two hearings, and done my own independent research, I issue

---

[3] The order is edited by us to correctly spell Schuldner's name, which was inadvertently misspelled in the order.

this order granting [respondents'] motion for reconsideration and awarding them $6,590.17 in costs.

"I exercise my discretion under both [Code of Civil Procedure section] 1008 and . . . my inherent authority per *Le Francois v. Goel* (2005) 35 Cal.4th 1094 to reconsider the May 31 order. [Respondents'] failure to present receipts for their claimed costs . . . has now been remedied and the interests of justice would not be served by now precluding them from receiving the costs that they would otherwise have received had it not been for their now remediated error.

"The December 21, 2018 memorandum of costs filed by [respondents] claims filing and motion fees of $1,620.70, deposition costs of $5,816.51 and total costs of $7,437.21, which, absent a timely filed amended memorandum, are the maximum amounts of costs recoverable by [respondents.] There was no timely filed amended memorandum. Assuming without deciding that the change in the website language constitutes recovery 'other than monetary relief' by Mr. Schuldner within the meaning on [Code of Civil Procedure section] 1032[, subdivision] (a)(4), I exercise my discretion per that subsection to determine that [respondents] are the prevailing parties for purposes of recovery of costs because the primary relief sought by Mr. Schuldner was monetary, not injunctive.

"[Respondents] have shown that they reasonably and necessarily incurred at least $1,620.70 in filing and motion fees and $4,969.47 in deposition costs for a total of $6,590.17. I reject Mr. Schuldner's arguments that [respondents] have not provided sufficient receipts or other documentation supporting these amounts. The court's register of actions shows that [respondents] incurred far more than $1,620.70 in recoverable costs and the documentation provided by [respondents] on this motion are

9

further corroboration. At no time have I stated or implied that the register of actions was not sufficient to support [respondents'] claimed filing and motion fees. I specifically find that $4,969.47 in deposition costs were reasonably and necessarily incurred and are allowable.

"I have not considered the new lawsuit filed by Mr. Schuldner nor did I find either relevant or persuasive Mr. Schuldner's speculation that [respondents] do not intend to make any efforts to enforce an award of costs.

"For the reasons set forth above, [respondents] are entitled to a costs award of $6,590.17."

Following that, Schuldner filed a series of motions attempting to have Judge Kahn change his ruling, including motions for new trial and for reconsideration. All of his motions were rejected. Schuldner also filed challenges to Judge Kahn, including a preemptory challenge and a challenge for cause. Both were unsuccessful. Finally, on July 13, 2020, Schuldner filed a notice of appeal, purporting to appeal from three separate orders, those dated June 23, 2020, March 13, 2020, and October 10, 2019. However, as Schuldner's brief makes clear, "The sole issue here is whether a post judgment motion for reconsideration on costs is allowed, when no new facts/law are alleged."

## DISCUSSION

### Introduction

Schuldner has filed an opening brief that is all of seven-pages long. The first three pages include six sections entitled "Introduction" (four-lines); "Jurisdictional Issues" (two-lines); "Nature of Appeal" (one-line); "Procedural History" (one and one-half pages); "Facts" (two-lines(!)); and "Standard of Review" (two-lines, saying "Judge Kahn treats the issue as one of law to be decided de novo.")

10

There follows a section "VII.  Argument" that has two arguments, "A" and "B."  They are as follows:  "A.  Judge Kahn got it backwards.  The smaller the issue, the less opportunity a party should have for reconsideration."  And "B.  The arbitrator's characterization of the underlying facts is disputed, and not relevant to this appeal.  Since this characterization was never an issue in the litigation, appellant never had an opportunity to present evidence to dispute it."

The brief is manifestly insufficient.  And Schuldner's appeal has no merit, for reasons both procedural and substantive.

**The Standard of Review**

As noted, respondents moved for reconsideration in papers that cited among other things to Code of Civil Procedure section 473, subdivision (b), which provides for relief from orders entered based on "mistake, inadvertence, surprise, or excusable neglect."  Judge Kahn granted reconsideration.

Orders involving reconsideration are reviewed for abuse of discretion. (*Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027.) So, too, are orders granting relief under the discretionary provisions of Code of Civil Procedure section 473, subdivision (b).  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)  Thus, to prevail on his appeal, Schuldner must demonstrate such abuse.  He has not.  Indeed, he cannot even urge abuse of discretion here, as he has not provided an adequate record—a transcript of the hearing.

*Snell v. Superior Court* (1984) 158 Cal.App.3d 44, 49 is dispositive: " 'In the absence of a transcript the reviewing court will have no way of knowing . . . what grounds were advanced, what arguments were made and what facts may have been admitted, mutually assumed or judicially noticed

11

at the hearing.  In such a case, no abuse of discretion can be found except on the basis of speculation.' "  As another Court of Appeal put it, on "issues . . . involving the abuse of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable." (*Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79–80.)  This rule is devastating to Schuldner's appeal here.  Likewise, the principles of appellate review.

**The Principles of Appellate Review**

The Supreme Court has recently collected the applicable principles in *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609:  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 . . . ; see generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [citing cases].) 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (9 Witkin, *supra*, § 355, at p. 409, see Cal. Const., art. VI, § 13.)  'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)"

Not only is it Schuldner's burden to demonstrate error (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 564; see *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573), to do so he must "present meaningful legal analysis supported by citations to authority and citations to facts in the

12

record that support the claim of error. . . . [C]onclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) This, Schuldner has not done.

Beyond all that, superimposed on all these rules is the principle noted in *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108, that even if a court has committed error—which Schuldner has not shown—the appealed-from order must be affirmed unless it has resulted in a miscarriage of justice. (See Cal. Const., art VI, § 13.) There is no miscarriage of justice here.

**Judge Kahn's Ruling Was Right**

Respondents' motion for reconsideration was filed within 10 days of Judge Kahn's oral announcement that he would not allow costs; it was made before the same judge who issued the earlier ruling; and it explained why the material had not been produced at an earlier time. (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342.) In short, the motion met the requirements for reconsideration under Code of Civil Procedure section 1008.

But even if it did not, Judge Kahn's ruling will be upheld under the rule set forth by our Division Four colleagues in *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1303–1304 (*Barthold*), which began its opinion with this "introduction": "The California Supreme Court held, in *Le Francois v. Goel*[, *supra*,] 35 Cal.4th 1094 . . . (*Le Francois*), that even when Code of Civil Procedure section 1008 (section 1008) precludes a party from moving for reconsideration, a trial court has inherent authority to correct an erroneous ruling on its own motion. In this marital dissolution case, the trial judge denied a postjudgment motion filed by the wife. She promptly filed a motion for reconsideration. The trial judge determined that the motion did not in fact meet the requirements of section 1008, but also that his earlier ruling had been erroneous. Accordingly, the judge reversed himself, and granted

13

the relief sought by the wife.  [¶]  We conclude that the trial court's inherent authority to correct its errors applies even when the trial court was prompted to reconsider its prior ruling by a motion filed in violation of section 1008. Because that is what occurred in the present case, we affirm the trial court's order."

The facts in *Barthold* involved a motion by Kay seeking a determination she was entitled to a "listing bonus" under the terms of a marital settlement agreement with her ex-husband Aubin, basing her claim on the advice she received from the real estate broker.  The trial court denied her motion because it did not support that the broker suggested the delay. Kay filed a motion for reconsideration, which included a declaration from the broker.  This is how the Court of Appeal described Aubin's opposition and the trial court's holding:

"In his opposition to Kay's motion, Aubin argued that Kay had presented no new or different facts, and that to the extent she had presented new evidence, she had provided no satisfactory explanation for her failure to present it with the original motion.  Aubin also submitted a declaration reiterating that the broker never suggested or even mentioned to him that the listing date should be postponed.  He also contended that Kay should be sanctioned for filing the motion under [Code of Civil Procedure] section 1008, subdivision (d).

"In his order filed September 6, 2006, the trial judge stated at the outset that '[w]hen I ruled on this case in July[,] I completely missed the most important point.  At that time the parties were not seriously contesting whether the real estate broker had asked to have the listing delayed.  Now that I realize the true situation, [Kay's] somewhat "oblique" statement in her declaration does make sense.'  He went on to say that he had reread Aubin's

14

opposition to the original motion, and that the thrust of Aubin's argument at that time was not that the broker had failed to make the recommendation, but that Kay had not sought a court order authorizing the delay.

"The remaining body of the trial judge's order of September 6, 2006, reads as follows: 'Although a party who makes a motion under [s]ection 1008 must strictly follow the requirements of that section in bringing the motion, the court has inherent authority to correct a mistaken ruling if this is done before the ruling becomes final. So, if the court clearly made a mistake in interpreting what the parties were contending at an earlier hearing, the injustice can be fixed. See *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156 . . . . [¶] I find that there never was a legitimate dispute about whether . . . the broker[] had recommended that the listing be delayed. I do not buy the suggestion made at the last hearing that there really was a genuine dispute about this. [¶] As to the issue that the parties were actually arguing at the July hearing—whether [Kay] had to apply to the court for an order extending the listing or else the delay would not be excuse[d]—my answer is no. She did not have to go to court to be excused from the delay as long as the broker had recommended it.'

"The court concluded by ordering that: 'The motion for reconsideration is granted. [Kay] is entitled to the [listing] bonus. . . .' " (*Barthold, supra,* 158 Cal.App.4th at pp. 1306–1307.)

Reaching that decision, our colleagues observed among other things that "although the trial court's reconsideration of its earlier order was not the result of 'an unprovoked flash of understanding' on the part of the judge, it clearly was intended to correct an order that the court had come to believe was erroneous. [¶] . . . [¶] . . . [I]t is clear that a party's filing of a motion for reconsideration in violation of the reconsideration statutes does not erect a

15

permanent, insurmountable barrier to reconsideration by the trial court on its own motion." (*Barthold*, *supra*, 158 Cal.App.4th at pp. 1308–1309.)

## DISPOSITION

For each, and all, of the reasons set forth above, Schuldner has failed to show that Judge Kahn committed error, let alone that there was a miscarriage of justice. To the contrary, Judge Kahn correctly held that the modest amount of costs awarded respondents after the many years of litigating with Schuldner was fair, just, and supported by the evidence. The order of October 10, 2019 is affirmed. Respondents shall recover their costs on appeal.

                                             _____

                                             Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

*Schuldner v. InComm Financial Services, Inc.* (A160691)