Filed 9/15/14  Marquez v. The County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GEORGE MARQUEZ, JR., a Minor, etc., | |
| Plaintiff and Respondent, | E057369 |
| v. | (Super.Ct.No. RIC10020000) |
| THE COUNTY OF RIVERSIDE et al., | OPINION |
| Defendants; | |
| NATHANIEL J. FRIEDMAN et al., | |
| Objectors and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed with directions.

Nathaniel J. Friedman for Objectors and Appellants.

No appearance by Respondent.

I

INTRODUCTION

After the jury returned a verdict in favor of plaintiff George Marquez, Jr., a minor,

1

in a medical malpractice action against Guillermo Gomez, M.D., the trial court entered an order approving compromise, which included $158,000 in attorney fees. Several months later, the trial court conducted an OSC[1] hearing regarding reducing the attorney fees award and, over plaintiff's attorney's objection, ordered the fees reduced to $99,416.67. The balance, $58,583.33, was ordered deposited in the minor's blocked account.

Plaintiff's attorneys, Nathaniel Friedman and Nathaniel Friedman, a professional corporation (Friedman), appeal the trial court order entered on October 3, 2012, revoking the May 3, 2012 order approving compromise.[2] Friedman contends the trial court lacked jurisdiction to reconsider and modify the order approving compromise, was estopped from reducing the original attorney fees award, and erred in reducing the attorney fees award based on MICRA.[3] Friedman also argues that the judge who reconsidered and reduced the attorney fees award, did not have authority to reconsider the order of another judge in the same court. Friedman urges this court to disregard MICRA Business and Professions Code section 6146[4] on the ground the statute has outlived its usefulness and is unconstitutional.

---

[1] Order to show cause.

[2] Friedman was not a party in the underlying lawsuit. He only represented the plaintiff in the lawsuit.

[3] Medical Injury Compensation Reform Act of 1975 (Stats. 1975, 2d Ex. Sess., ch. 1, § 25, pp. 3969-3970, ch. 2, § 1.192, pp. 3991-3992).

[4] Unless otherwise noted, all statutory references are to the Business and Professions Code.

2

We reject Friedman's contentions and affirm the judgment. We conclude the trial court had jurisdiction to reconsider and reduce the original attorney fees award, and appropriately did so in accordance with MICRA limitations on attorney fees awarded in medical malpractice actions.

II

FACTS AND PROCEDURAL BACKGROUND

In September 2010, Imelda Martinez and Jorge Marquez, the parents of George Marquez, Jr. retained Friedman to represent their son, George Marquez, Jr., in a medical malpractice lawsuit. The attorney contingency fee agreement stated that if the case was resolved by settlement or judgment, Friedman would be entitled to MICRA fees.

In October 2010, George Marquez, Jr., through his guardian ad litem, Jorge Marquez (plaintiff), filed a complaint, alleging medical malpractice against defendants County of Riverside, doing business as Riverside County Regional Medical Center, A. Romain, R.N., Guillermo Gomez, M.D., and Herb S. Brar, M.D.[5] Plaintiff alleged Dr. Gomez should have performed a cesarean section on Imelda Martinez, instead of a vaginal delivery. His failure caused George Marquez, Jr., to suffer shoulder dystocia[6] at birth.

---

[5] Defendants County of Riverside doing business as Riverside County Regional Medical Center, Herb S. Brar, M.D., and A. Romain, R.N., were dismissed from the action prior to trial.

[6] "Slow or difficult labor or delivery." (*Merriam-Webster's Collegiate Dict.* (10th ed. 1996) p. 361.) During George Marquez, Jr.'s, birth, Dr. Gomez "pulled on Plaintiff's head in an attempt to alleviate the shoulder dystocia. As a consequence,

*[footnote continued on next page]*

3

In April 2012, the case was tried to a jury, resulting in a verdict in favor of George Marquez, Jr., and against defendant Guillermo Gomez, M.D., in the amount of $477,674. During mediation after the trial, the parties reached a settlement of $395,000, not including interest and costs. Thereafter, plaintiffs' attorney, Friedman, filed a petition and amended petition to approve a minor's compromise (Petition). In the Petition, Friedman requested $158,000 in attorney fees to be paid from the $395,000 in settlement proceeds. In support of the Petition, Friedman provided a declaration stating that the amount of requested attorney fees was calculated based on the "reasonable fee standard," under California Rules of Court rule 7.955.[7] Friedman further stated that the requested $158,000 in attorney fees amounted to 40 percent of the plaintiff's gross recovery, and was reasonable and "proportionate to the value of the services performed, given the relevant considerations."

By court order dated May 3, 2012, Judge Pro Tem Swortwood approved the minor's compromise. During the hearing on the Petition, the court noted that the settlement would become final upon Jorge Marquez signing the settlement documents. The settlement proceeds were ordered deposited in a blocked account for the minor. The court further ordered a review hearing set for August 1, 2012, to confirm the settlement proceeds had been deposited in the minor's blocked account. On May 4, 2012, the case

---

*[footnote continued from previous page]*
George suffered injury to the brachial plexus, "[a] network of nerves lying mostly in the armpit and supplying nerves to the chest, shoulder, and arm." (*Merriam-Webster's Collegiate Dict.* (10th ed. 1996) p. 137.)

[7] Undesignated rule references are to the California Rules of Court.

was dismissed with prejudice. On May 7, 2012, $164,787 of the settlement proceeds was deposited in a blocked account for George Marques, Jr. On May 16, 2012, plaintiff filed a receipt and acknowledgment of order for the deposit of money into a blocked account.

In August 2012, Commissioner Burgess, on the court's own motion, set an OSC hearing regarding why the May 3, 2012 order approving compromise should not be reconsidered pursuant to section 6146, subdivision (a), and rule 7.955, and whether the attorney fees award should be reduced to $99,416.67, with the remaining $58,583.33 ordered deposited in the minor's blocked account.

In response to the OSC notice, Friedman filed a declaration stating that the trial court lacked jurisdiction after the trial court clerk entered on May 4, 2012, a dismissal without prejudice, as requested by plaintiff. Friedman asserted that the court was estopped from reducing the attorney fees award because, in reliance on the court's May 3, 2012 order approving compromise, Friedman had disbursed the $58,583 in attorney fees. Friedman further argued that under the recent case of *Gonzalez v. Chen* (2011) 197 Cal.App.4th 881 (*Gonzalez*), MICRA section 6146, subdivision (a), was inapplicable and rule 9.755 exclusively controlled the amount of attorney fees awarded.

In a supplemental declaration, Friedman noted he had not stipulated to a commissioner hearing the matter and asserted that Commissioner Burgess erred in deciding the matter and was subject to liability for money damages if she did not dismiss the OSC, since the commissioner was not immune from liability. The trial court concluded Friedman had refused to stipulate to Burgess conducting the OSC hearing and therefore assigned the matter to Judge Cahraman. Friedman filed a peremptory challenge

5

for cause under Code of Civil Procedure section 170.6 against Judge Cahraman. Judge Cahraman initially denied the challenge and then later, after reconsideration, granted it. The matter was transferred to Judge Fisher.

On October 3, 2012, Judge Fisher heard the OSC regarding reducing attorney fees approved in Judge Swortwood's May 3, 2012 order approving compromise. After reviewing the court file, including the petition for order approving compromise and Friedman's declarations opposing reducing the attorney fees award, Judge Fisher ordered attorney fees reduced from $158,000, to $99,416.67, which Judge Fisher concluded was the maximum attorney fees permitted under section 6146.[8] Judge Fisher further ordered that Friedman return the excess sum of $58,583.33 to the minor by depositing the amount in the minor's blocked account. The court set an OSC hearing re: status of deposit of the $58,583.33 in George Marquez, Jr.'s, blocked account. On October 5, 2012, the court clerk sent notice of the court's order only to Friedman and his attorney who represented him during the hearing.

---

[8] Since there is no respondent or respondent's brief explaining why the trial court ruled as it did, this court appreciates Judge Fisher's clear and concise statement of the law and facts relied upon in concluding the trial court had jurisdiction to hear the matter and order attorney fees reduced. As noted in *Gonzalez v. Chen, supra,* 197 Cal.App.4th at page 887, which involved similar circumstances, "[t]he defendant in a medical malpractice case has no interest in how the settlement proceeds are allocated. Once the malpractice carrier has reached a settlement figure approved by the court, the health care provider is out of the picture. Further, the minor's guardian ad litem, often a relative, is rarely skilled in the law and usually depends on the minor's attorney for advice. If the minor's attorney argues, as he did here, that he is entitled to additional attorney fees under MICRA, the guardian ad litem may not even question the argument. The trial court itself must develop and resolve any counterarguments on behalf of the minor, lest the attorney receive an excessive award of fees."

## III

## JURISDICTION TO MODIFY ORDER APPROVING COMPROMISE

Before reaching the attorney fees issue on the merits, this court must determine whether the trial court on October 3, 2012, had jurisdiction to reduce the May 3, 2012 attorney fee award, after the trial court had entered an order approving compromise and dismissed the case with prejudice. The trial court (Judge Fisher) concluded that under *Le Francois v. Goel* (2005) 35 Cal.4th 1094 (*Le Francois*), *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301 (*Barthold*), and *New Tech Developments v. Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065 (*New Tech*), the trial court had inherent authority to reconsider the May 3, 2012 order approving compromise.

In *Le Francois, supra,* 35 Cal.4th 1094, the trial court denied the defendants' motion for summary judgment. The defendants filed another summary judgment motion based on the same grounds and facts. The motion was transferred to a different judge than the one who decided the previous summary judgment motion. The trial court granted the second motion. (*Id.* at pp. 1096-1097.) The California Supreme Court held in *Le Francois* that "sections 437c, subdivision (f)(2), and 1008 prohibit a *party* from making renewed motions not based on new facts or law, but do not limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question." (*Id.* at p. 1097.) The court in *Le Francois* reversed because the second judge had not decided the matter on its own motion. (*Id.* at p. 1109.) Here, the OSC to reduce attorney fees was brought on the court's own motion.

7

The *Le Francois* court stated in a footnote that it was not addressing an opinion on "when and under what circumstances one judge may revisit a ruling of another judge." (*Le Francois, supra,* 35 Cal.4th at p. 1097, fn. 2.) The court in *New Tech*, addressed this issue. In *New Tech, supra,* 191 Cal.App.3d 1065, a judge pro tem granted the plaintiff a preliminary injunction. Later, the defendant moved to dissolve the preliminary injunction. A regular judge dissolved the preliminary injunction, and the plaintiff appealed. On appeal, the court in *New Tech* rejected the defendant's contention that the trial court did not have jurisdiction to hear the defendant's motion to dissolve the injunction because the defendant's motion was not heard by the same judge who granted the injunction. (*Id.* at pp. 1067, 1070.)

As the court in *New Tech* explained, "The general rule is once a matter has been assigned to one department of the superior court for hearing and determination, and there has been no final disposition, 'it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned.' [Citation.] The policy basis for such a rule is clear. It prevents the certain confusion generated by 'conflicting adjudications of the same subject-matter by different departments of the one court' (*ibid*.) and invidious forum-shopping within the superior court." (*New Tech, supra,* 191 Cal.App.3d at p. 1069.)

As in *New Tech,* in the instant case, the first order (on May 3, 2012) was entered by a judge pro tem and the subsequent order setting aside the initial order was entered by a regular judge. The court in *New Tech* rejected the defendant's objection to the regular

8

judge deciding the matter instead of the original judge pro tem. The *New Tech* court explained: "'The appointment of a temporary judge to hear a particular "cause" carries with it the power to act until the final determination of *that proceeding*.' [Citation.] This means the judge pro tempore has the authority to hear the matter if the parties so stipulated [citations],[] but it does not mean that only the judge pro tempore is empowered to rule on the matter. Although the record does not reveal details of Commissioner Danoff's tenure as a judge pro tempore, it does indicate he was unavailable to preside over the subsequent hearing." (*New Tech, supra,* 191 Cal.App.3d at p. 1069.)

Friedman argues the October 3, 2012 order reducing attorney fees must be set aside because the matter was not reconsidered and decided by Judge Swortwood, the same judge who entered the May 3, 2012 order. But it can be reasonably inferred, in the absence of any evidence to the contrary, that Judge Swortwood, who was serving as a judge pro tem, was unavailable to hear the OSC matter on October 3, 2012. "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' [Citations.]" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) To overcome this presumption, "[t]he party attacking the judgment must clearly and affirmatively demonstrate that the trial court relied on improper considerations. [Citation.]" (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 835.) Friedman has not met his burden of establishing Judge Swortwood was available to hear the OSC matter.

The record shows that the OSC matter was assigned to Commissioner Burgess.

9

Friedman would not consent to Commissioner Burgess hearing the matter. The matter was reassigned to Judge Cahraman, against whom Friedman filed a peremptory challenge under Code of Civil Procedure section 170.6, which was granted. The matter was transferred to the civil supervising judge, Judge Fisher, who ultimately heard the matter. Since there is no evidence to the contrary, it is presumed Judge Swortwood was not available to hear the matter and the matter was properly heard by Judge Fisher.

Friedman also argues that the trial court did not have jurisdiction to reconsider the May 3, 2012 attorney fees award because it was a final order. The court in *Le Francois* mentioned in a footnote that, "What we say about the court's ability to reconsider *interim* orders does not necessarily apply to *final* orders, which present quite different concerns." (*Le Francois, supra,* 35 Cal.4th at p. 1105, fn. 4.) "The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered. However, it may not amend such a judgment to substantially modify it or materially alter the rights of the parties under its authority to correct clerical error." (*Craven v. Crout* (1985) 163 Cal.App.3d 779, 782.)

The court in *Barthold, supra,* 158 Cal.App.4th 1301, addressed the issue of whether the court could reconsider a final order. In *Barthold*, a marital dissolution action, the trial court granted the wife's motion for reconsideration of a trial court ruling denying the wife's motion relating to the division of proceeds from the sale of her home. The order at issue in *Barthold* was a final, appealable postjudgment order, not an interim order. (*Id.* at p. 1312.) The *Barthold* court rejected the husband's argument that

10

*Le Francois* was inapplicable because it only pertained to interim orders, not final orders. (*Ibid.*) The court explained: "Given that section 1008 itself draws no distinction between the reconsideration of interim and final orders, both general types of orders are encompassed by section 1008, absent one presenting special concerns to which our high court alluded in its footnote." (*Ibid.*) "Thus, the fact that the order in this case was issued after judgment, and in that sense was 'final,'[] does not take it outside the ambit either of section 1008, or the construction given to that statute by the Supreme Court in *Le Francois.*" (*Id.* at p. 1313.)

In a footnote, the *Barthold* court added that, "In another sense, however, the original order was *not* yet 'final' at the time the judge reconsidered it, because the time to appeal it had not yet expired. Thus, this appeal does not present, and we therefore do not decide, the issue whether a trial court can reconsider an appealable order on its own motion after the time to appeal from that order has expired. This circumstance may well have been the issue the Supreme Court had in mind when it indicated in *Le Francois* that '. . . final orders . . . present quite different concerns' from interim orders. (*Le Francois, supra,* 35 Cal.4th at p. 1105, fn. 4, italics omitted.)" (*Barthold, supra,* 158 Cal.App.4th at p. 1313, fn. 9.)

Unlike in the instant case, in *Le Francois*, *Barthold*, and *New Tech*, the second ruling setting aside the initial ruling, occurred within the 60-day period to file an appeal. The trial court in the instant case cited *Pettigrew v. Grand Rent-A-Car* (1984) 154 Cal.App.3d 204 (*Pettigrew*) for the proposition that, even though the 60-day period to file an appeal had run, the trial court still had jurisdiction to reconsider the May 3, 2012 order

11

approving compromise. In *Pettigrew,* the jury returned a $150,000 verdict and the trial court entered a judgment on the verdict in September 1981. In December 1981, after the time to appeal had run and the judgment was final, the defendant moved under Code of Civil Procedure section 473, to vacate the judgment or modify it to comply with the statutory limits. The trial court granted the motion and entered an order correcting the $150,000 judgment by reducing it to $15,000, to conform to the statutory limit under Vehicle Code section 17151. (*Pettigrew,* at p. 207.) This statutory provision limits a vehicle owner's liability for damages caused by another driving with the owner's permission. The *Pettigrew* court affirmed, holding that the error was a clerical error and the trial court had authority to correct clerical mistakes in the judgment at any time.

Code of Civil Procedure section 473, subdivision (d), provides in relevant part: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order."

The court in *Pettigrew* explained the trial court had the power to reduce the judgment because "Section 473 expressly empowers a court to correct clerical mistakes in its judgments, even after entry. The statute imposes no time limitation on that power. [¶] The power of a court to correct clerical mistakes in its judgments is also an inherent power. [¶] . . . 'The power is unaffected by the pending of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties. [Citation.]' [Citation.]" (*Pettigrew, supra,* 154 Cal.App.3d at

12

p. 209.) Under *Pettigrew*, the trial court can correct clerical mistakes any time, even after the time to appeal has run. Therefore, in the instant case, if the trial court made a clerical mistake in approving attorney fees exceeding MICRA caps, the trial court had jurisdiction to correct the error at any time.

The court in *Pettigrew* explained that "'The distinction between a clerical error and a judicial error does not depend so much on the person making it as it does on whether it was the deliberate result of judicial reasoning and determination. [Citations.]' [Citation.] [¶] A clerical error in a judgment, '"as regards correction, includes one made by the court which cannot reasonably be attributed to exercise of judicial consideration or discretion."' [Citations.] [¶] 'Clerical error, . . . is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is "whether the error was made in rendering the judgment, or in recording the judgment rendered." [Citation.] Any attempt by a court, under the guise of correcting clerical error, to "revise its deliberately exercised judicial discretion" is not permitted. [Citation.]' [Citation.]" (*Pettigrew, supra,* 154 Cal.App.3d at pp. 209-210.)

The *Pettigrew* court further explained: "Witkin has said that the test as to whether an error in a judgment is a clerical or a judicial error 'is simply whether the challenged judgment was made or entered inadvertently (clerical error) or advertently (judicial error).' (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 65, p. 3226.) 'The general rule with respect to the power of the court to modify a judgment does not preclude the court from correcting clerical errors and misprisions either in the entry of the judgment or due to inadvertence of the court. The term "clerical error" covers all errors, mistakes, or

13

omissions which are not the result of the exercise of the judicial function.  If an error, mistake, or omission is the result of inadvertence, but for which a different judgment would have been rendered, the error is clerical and the judgment may be corrected to correspond with what it would have been but for the inadvertence.  [Citations.]  The court has inherent power to correct such errors.  This power extends to striking out findings of fact and conclusions of law and a judgment and substituting wholly different findings of fact and conclusions of law and judgment.  In correcting a clerical error or mistake the trial judge may give effect to facts within his personal knowledge and to his recollection. [Citations.]'  [Citation.]"  (*Pettigrew, supra,* 154 Cal.App.3d at p. 210.)

In *Pettigrew,* the court concluded that, "[i]n the absence of a record compelling a conclusion to the contrary, we hold that the excessive amount of the award as originally entered, $150,000, was the result of inadvertence on the part of the court and the clerk.  It clearly was not 'the deliberate result of judicial reasoning and determination,' [citation] nor could it 'reasonably be attributed to the exercise of judicial consideration or discretion.' [Citation.]  [¶]  It cannot be presumed that the court intended deliberately to render and enter a judgment which was contrary to law.  Thus, there was an error in the judgment which was made inadvertently; it was a clerical error and could be corrected by the court under its statutory and inherent power so to do."  (*Pettigrew, supra,* 154 Cal.App.3d at p. 211.)

Where the MICRA statute limiting attorney fees was overlooked through inadvertence by the court, and counsel did not bring the statute to the court's attention, any error in awarding excessive attorney fees in violation of MICRA, may properly be

14

characterized as inadvertent clerical error.  (*Pettigrew, supra,* 154 Cal.App.3d at pp. 211-212.)  Furthermore, in the instant case, when entering the May 3 2012 order, the trial court merely approved the parties' settlement agreement without exercising discretion in determining the amount of settlement proceeds allocated to attorney fees.  Accordingly, we conclude that, if the initial attorney fees award violates MICRA limits, the error constitutes clerical error and Judge Fisher did not err in modifying the order approving compromise by reducing the fees to conform to the limits of attorney fees permissible under MICRA.  (*Pettigrew,* at p. 212.)

Citing *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228 (*Rochin*), Friedman argues that, even assuming the attorney fees were impermissible under MICRA, entry of the order was not a clerical error because the trial court intended to make the order and the trial court lost jurisdiction to correct the error because the time to appeal had run.  In *Rochin,* a personal injury action, the jury allocated fault using a special verdict form.  (*Id.* at p. 1232.)  At first, fault was allocated to the plaintiff, the defendant, and "others."  (*Ibid.*)  After polling the jury, the court ordered the jury to recalculate fault, excluding "others."  (*Ibid.*)  The jury did so after further deliberation, and based upon the new calculation, the court entered judgment.  (*Id.* at p. 1233.)  Thereafter, the defendant submitted a proposed amended judgment reflecting the original, lower percentage of fault the jury had originally allocated, which the court subsequently signed.  (*Ibid.*)

On appeal, the plaintiff argued the amended judgment was void, representing a "'wholesale modification of a regularly entered judgment,' which was not accomplished

15

in the manner prescribed by statute." (*Rochin, supra,* 67 Cal.App.4th at p. 1237.) The Court of Appeal agreed and reversed, rejecting the defendant's claim that the court was merely correcting a clerical error. (*Id.* at p. 1238.) "The court's signing of the amended judgment, which reinstated the stricken allocations of fault, substantially altering the judgment can only be viewed as an attempt to correct prior perceived judicial error in directing the jury to disregard the fault of nonparties. The trial court had no jurisdiction to so amend the judgment, and the resulting amended judgment is thus void and of no effect." (*Ibid.*)

*Rochin, supra,* 67 Cal.App.4th 1228 is distinguishable because, as discussed above, the error in the instant case was clerical, rather than judicial error. In *Rochin,* the trial court committed judicial error by exercising its discretion in erroneously instructing the jury to disregard third party fault and recalculate fault. In the instant case, the trial court error consisted of an inadvertent oversight in approving attorney fees which exceeded MICRA limits, committed by the trial court when approving a minor's compromise.

*Rochin* is also distinguishable because, in the instant case, the record on appeal does not demonstrate that the time to appeal had actually run. The record on appeal, including the court register of actions, does not show notice of the May 3, 2012 order approving compromise or a notice of entry of judgment was served on the parties by either the court clerk or the parties prior to the trial court entering the October 3, 2012 order. As a consequence, under California Rules of Court, rule 8.104(a)(1), the time to appeal the May 3, 2012 order did not run until 180 days after entry of judgment. The

16

time to appeal thus did not run until November 2012, after the trial court ordered the attorney fees reduced on October 3, 2012. Any error in approving $158,000 in attorney fees constituted clerical error and therefore Judge Fisher had jurisdiction to reconsider the award and correct it at the OSC hearing on October 3, 2012.

IV

ESTOPPEL

Friedman alternatively contends Judge Fisher was estopped from modifying Judge Swortwood's October 3, 2012 order approving compromise. The record does not support a finding of estoppel in the context of this case.

Friedman asserts that, because he relied on Judge Swortwood's May 3, 2012 order approving $158,000 in attorney fees, Judge Fisher was estopped from ruling the May 3, 2012 order was invalid and reducing the attorney fee award. In support of this contention, Friedman quotes *Greene v. State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583 (*Greene*), which states: "'If a trial court encounters statements or conduct by a defendant which lulls the plaintiff into a false sense of security resulting in inaction, and there is reasonable reliance, estoppel must be available . . . .'" (*Id.* at p. 1592, quoting *Borglund v. Bombardier, Ltd.* (1981) 121 Cal.App.3d 276, 281.) The court in *Greene* noted that "The above quoted principle applies with no less force to statements and conduct by a court, upon which a plaintiff surely should be able to rely." (*Greene,* at p. 1592.) "'[E]stoppel may be asserted against the government "where justice and right require it."' [Citations.] Nor is the executive branch of government the only one of the three branches which may find its interest in conflict with the interest of a litigant, such

17

that it might be estopped from pursuing that interest to the detriment of that litigant." (*Id.* at p. 1590.)

Judge Fisher was not estopped from modifying the October 3, 2012 order approving compromise. "'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" (*Greene, supra,* 224 Cal.App.3d at p. 1590, quoting *Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.)

Estoppel does not apply here. Equity and fair dealing do not support a finding of estoppel here, where, as discussed below, Friedman knowingly and inappropriately requested attorney fees in excess of MICRA limits. Judge Fisher and the trial court in general were not estopped from changing Judge Swortwood's May 3, 2012, erroneous order, approving attorney fees in violation of MICRA attorney fee limits.

V

MICRA ATTORNEY FEES CAP

In arguing the trial court unlawfully ordered his attorney fees reduced in conformity with MICRA section 6146, Friedman asserts that section 6146 is

18

unconstitutional.[9]  Friedman acknowledges that the California Supreme Court held in

*Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 923 (*Roa*), that section 6146 is

constitutional.  Nevertheless, Friedman urges this court to reconsider *Roa* and hold that

section 6146 is unconstitutional on the ground the rationale for enacting MICRA has

ceased to exist.  We decline to do so.  This court is bound by our high court's holding in

*Roa* that section 6146 is constitutional.  (See *Auto Equity Sales, Inc. v. Superior Court*

(1962) 57 Cal.2d 450, 455-456.)  Unless the California Supreme Court revisits the issue,

or our Legislature amends the statute, or the United States Supreme Court decides

otherwise, we must affirm the trial court's reliance on section 6146.

Furthermore, Friedman has not established changed factual circumstances

demonstrating the purpose for enacting section 6146 no longer exists.  The Legislature

explained in the preamble to MICRA the rationale for enacting MICRA:  "'The

Legislature finds and declares that there is a major health care crisis in the State of

California attributable to skyrocketing malpractice premium costs and resulting in a

---

[9]  Section 6146 provides in relevant part:  "(a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits:

"(1) Forty percent of the first fifty thousand dollars ($50,000) recovered.

"(2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered.

"(3) Twenty-five percent of the next five hundred thousand dollars ($500,000) recovered.

"(4) Fifteen percent of any amount on which the recovery exceeds six hundred thousand dollars ($600,000).

"The limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind."

19

potential breakdown of the health delivery system, severe hardships for the medically indigent, a denial of access for the economically marginal, and depletion of physicians such as to substantially worsen the quality of health care available to citizens of this state. The Legislature, acting within the scope of its police powers, finds the statutory remedy herein provided is intended to provide an adequate and reasonable remedy within the limits of what the foregoing public health safety considerations permit now and into the foreseeable future.' (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007.)" (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 372, fn. 11.)

The court in *Roa*, held that section 6146's attorney fees limits are rationally related to the MICRA scheme, in part, because, "In order to reduce malpractice insurance costs, MICRA incorporated a number of provisions that place special limits on, or that at least may tend to reduce, a malpractice plaintiff's recovery, provisions that are not applicable to other personal injury plaintiffs. . . . The Legislature may reasonably have concluded that a limitation on contingency fees in this field was an 'appropriate means of protecting the already diminished compensation' of such plaintiffs from further reduction by high contingency fees. [Citation.]" (*Roa, supra,* 37 Cal.3d at p. 932.)

Friedman argues that the purpose in enacting MICRA was to address the medical malpractice crisis and protect California's health care delivery system by reducing the cost of medical malpractice insurance. Citing a 2007 Los Angeles Times article, Friedman maintains that there is no longer a medical malpractice crisis in California and therefore no remaining justification for relying on *Roa's* holding that section 6146 is constitutional. However, Friedman has not established there is no longer a rational basis

20

for adhering to section 6146. Even assuming medical malpractice litigation has decreased since enactment of MICRA in 1975, this does not necessarily establish that the need for MICRA no longer exists. Any decrease can also be viewed as supporting the proposition that MICRA has been an effective deterrent to medical malpractice litigation and suggests that, if MICRA provisions, such as section 6146, were eliminated, medical malpractice litigation would increase.

Friedman further argues that under *Gonzalez, supra,* 197 Cal.App.4th 881**,** MICRA no longer controls attorney fee awards in medical malpractice actions. Friedman asserts that the court in *Gonzalez* held under almost identical facts as in the instant case that the trial court was required to award attorney fees in medical malpractice actions based exclusively on the reasonable standard set forth in rule 7.955. Friedman misconstrues the holding in *Gonzalez.* In *Gonzalez, supra,* 197 Cal.App.4th at page 885, the court held that the trial court erred in automatically awarding the maximum attorney fees allowable under MICRA, without considering whether the fees were reasonable under rule 7.955. Rule 7.955 generally governs the determination of whether attorney fees are reasonable. The *Gonzalez* court emphasized that "MICRA establishes *caps* on a recovery, not guarantees. (*Gonzalez,* at pp. 885, 888.)

Although the court in *Gonzalez, supra,* 197 Cal.App.4th at page 888, stated that the trial court was required to "redetermine the award of attorney fees under California Rules of Court, rule 7.955, not a local rule or MICRA," this language, when taken in the context of the *Gonzalez* decision as a whole, does not intimate that MICRA attorney fees caps no longer apply. We construe the language in *Gonzalez* as indicating that the trial

21

court must not assume the maximum amount of attorney fees permissible under MICRA constitutes reasonable fees. Rather, the trial court is required to determine whether, within the limitations of MICRA, the requested fees are reasonable under rule 7.955.

In the instant case, on October 3, 2012, the trial court appropriately reduced the attorney fees awarded in the May 3, 2012 order approving compromise, on the ground the attorney fees exceeded MICRA attorney fee limits under section 6146.

## VI

## DISPOSITION

The judgment is affirmed and the matter is remanded to the trial court for further action consistent with this opinion. No costs to be awarded.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RICHLI
Acting P. J.

MILLER
J.

22